**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AUGUST G.,**

                       **Plaintiff,**

    **vs.**                                          **5:20-CV-88**
                                                **(TJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

**DECISION & ORDER**

Plaintiff August G.. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security denying his application for benefits. Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying his application was not supported by substantial evidence and contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    BACKGROUND**

Plaintiff August G. filed this action pursuant to 42 U.S.C. § 405(g) to appeal the Defendant Commissioner of Social Security's denial of his claim for disability benefits.

Plaintiff filed the instant action on January 1, 2020. See dkt. # 1. His attorney filed

1

a brief in support of his appeal, and the Commissioner filed a brief in opposition. See dkt. #s 15, 21. After the parties completed the briefing but before the undersigned Judge rendered a decision, Plaintiff informed this Court that the New York courts had suspended his counsel's license to practice law for one year. See dkt. # 22. The Chief Judge of this Court then suspended Plaintiff's Counsel from practice in this Court. See dkt. # 25. Concerned about the situation and the adequacy of the representation that Plaintiff had received, the Court decided to deny the parties' respective motions for judgment on the pleadings without prejudice. See dkt. # 26. The Court further ordered the Plaintiff to engage an attorney within sixty days. The Court would permit the attorney to supplement Plaintiff's pleadings. If no new attorney entered an appearance for the Plaintiff within that time, the Court would then consider the pleadings filed by the original attorney.

No new attorney has entered an appearance for the Plaintiff, and the time to do so has passed. The Court will therefore consider the original pleadings filed by the parties.

## II.     FACTS

The Court will assume familiarity with the facts and set forth only those facts relevant to the Court's decision in the body of the decision below.

## III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

Administrative Law Judge ("ALJ") Gretchen Mary Greisler rendered a decision on Plaintiff's case on December 14, 2018. See Social Security Administrative Record ("R"), dkt. # 6, at 7-24. The question before the ALJ was "whether the claimant was disabled under sections 216(I) and 223(d) of the Social Security Act." Id. at 11. The ALJ's decision was partially favorable, finding that Plaintiff was disabled within the meaning of the Social

Security Act from January 3, 2015 through February 8, 2016. Id. The ALJ concluded, however, that Plaintiff experienced medical improvement, and had "been able to perform substantial gainful activity from" February 8, 2016 until the date of the decision. Id. at 12. As such, Plaintiff's "disability ended on February 8, 2016." Id.

The ALJ applied two separate sequential evaluation processes to make her determinations concerning whether Plaintiff was disabled during the relevant time period. Id. at 12-14 (describing processes). For the first evaluation, the ALJ first determined that the Plaintiff met the insured status requirements for the Social Security Act through March 31, 2021. Id. at 14. Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 3, 2015, the date his disability began. Id. at 15. The ALJ further concluded that from January 3, 2015 until February 8, 2016, "the period during which" he "was under a disability," Plaintiff "had the following severe impairments: left (non-dominant shoulder impairment and impingement syndrome with adhesive capsulitis, and spine disorder." Id. Those impairments "significantly limit the ability to perform basis work activities as required by SSR-85-28." Id. During that January 3, 2015 to February 8, 2016 period, however, the ALJ found that Plaintiff did not suffer from "an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Id. The ALJ considered whether Plaintiff had a major dysfunction of a joint, but no evidence indicated that Plaitniff could not "perform fine and gross movements" as defined in the regulations. Id. Plaintiff therefore did not have a "shoulder impairment" that "[rose] to the level of severity required" in the listings. Id. Similarly, Plaintiff's spine and neck disorders were severe, but "did not meet the requirements of this listing because there is no evidence of spinal arachnoiditis,

3

or lumbar spinal stenosis." Id.  No evidence indicated a nerve root compression significant enough to meet the listing.  Id.  In the end, the ALJ found that "[t]he record does not establish medical signs, symptoms, laboratory findings or degree of functional limitations required to meet or equal the criteria of any listed impairment[.]" Id.  No "acceptable medical source" had made such a finding.  Id.

The ALJ then reviewed the medical record and established that from January 3, 2015 until February 8, 2016, Plaintiff had a residual functional capacity ("RFC") "to perform sedentary work" except that he "could not reach with the non-dominant arm, and during the acute post-surgery phases had very limited use of his non-dominant arm[.]"  Id.  Plaintiff could not climb ladders, ropes or scaffolds, work at unprotected heights or in close proximity to dangerous machinery[.]"  Id.  He could "occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps."  Id.  Those limitations meant that Plaintiff could not perform any past relevant work.  Id. at 18.  His limitation to sedentary work meant that he could not perform the work as a UPS delivery driver that he had performed since 1986.  Id. at 19.  He had performed that job at a "heavy exertional level."  Id.

In the end, the ALJ concluded that from January 3, 2015 through February 8, 2016, no jobs existed in significant number in the national economy that Plaintiff could perform considering his "age, education, work experience, and residual functional capacity."  Id.  The ALJ relied on the testimony of a vocational expert in reaching this conclusion.  Id. at 19-20.  As a result, the ALJ found, "[a] finding of 'disabled' is therefore appropriate" under the federal regulations during the period from January 3, 2015 through February 8, 2016.  Id. at 20.

The ALJ then analyzed whether Plaintiff had suffered from a disability after

4

February 8, 2016.  She first found that "[b]eginning on February 8, 2016," Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity" of a listed impairment.  Id.  She relied on the same findings related above about fine gross motor skills and lack of evidence about specific impairments.  Id.  Next, the ALJ concluded that "[m]edical improvement occurred as of February 8, 2016[.]"  Id. at 21.  Plaintiff had undergone shoulder surgery in 2015, and had since "been released by his physician for light work with restrictions, an opinion shared by the Worker's Compensation medical examiner."  Id.  Physical therapy had helped Plaintiff's medical condition[.]"  Id.  Improvement had been "mild," but "there has been medical improvement."  Id.  A May 2016 physical examination "showed no obvious antalgic gait, left shoulder showed no deformity" and "no significant atrophy," though Plaintiff had stiffness in the joint.  Id.  His "[e]levation was 80, abduction was approximately 60, with no significant internal or external rotation."  Id.  Claimant had also testified that he had been working as a self-employed car detailer, "working with his right arm and taking breaks as needed."  Id.  He treated his back with medication, and had thus far declined to undergo the surgery recommended for his back.  Id.  Plaintiff testified that he was "reluctant" to undertake another back surgery.  Id.

The ALJ found that Plaintiff's medical improvement related to his ability to work.  Id.  That improvement increased Plaintiff's RFC.  Id.  The ALJ explained that "[i]n comparing the claimant's residual functional capacity for the period during which he was disabled with the residual functional capacity beginning February 9, 2016, the undersigned finds that the claimant's functional capacity for basic work activities has increased."  Id.  The ALJ then established an RFC for the Plaintiff, beginning on February 3, 2016: "to perform light work

as defined in 20 CFR 404.1567(b) except that claimant can occasionally, intermittently reach with the non-dominant arm but cannot reach overhead or behind the body with the non-dominant arm; the claimant cannot lift more than 10 lbs. with the non-dominant arm; the claimant cannot climb ladders, ropes or scaffolds, work at unprotected heights or in close proximity to dangerous machinery." Id.

After examining the medical record, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." Id. She also found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of his symptoms were "generally consistent with the medical evidence and other evidence in the record[.]" Id. The ALJ noted that 2017 x-rays "showed no dislocation, no lytic or blastic change, evidence of prior decompression, no joint space narrowing, no spurting, and were otherwise unremarkable." Id. Plaintiff had continued shoulder pain and stiffness, but "no atrophy and no deformity." Id. Plaintiff had been referred to treatment for chronic pain and continued with pain medication management. Id.

The ALJ also described the opinion evidence. She noted that Charles Jordan, MD, examined Plaintiff in May 2016. Id. at 22. That opinion found that Plaintiff had limited use of his left arm and could not reach above shoulder height. Id. Dr. Jordan also found that Plaintiff could not lift more than 50 lbs. to chest level and could not engage in repeated pushing and pulling with his left arm. Id. Dr. Jordan also concluded that Plaintiff had not reached maximum medical improvement. Id. Though the ALJ found Jordan's opinion "well supported," she supplied only "partial weight" to Dr. Jordan's conclusions, "as the record supports more restrictive exertional limitations, particularly lifting limitations." Id.

6

The ALJ provided "little weight" to the opinions of Padma Ram, MD and Terry Salmonsen, FNP-C, who had treated Plaintiff for chronic pain since 2012.  Id.  Ram concluded that Plaintiff was 50% impaired and Salmonsen found that his "'condition has been mostly well controlled.'"  Id.  The ALJ found that the "opinions . . . do not reference objective findings, particularly with reference to claimant's back, and do not set forth limitations or restrictions, but are conclusory statements regarding degree of impairment."  Id.  The ALJ found that the May 2016 opinion of Dr. Ryan Smart that Plaintiff could perform light duty work was supported by Smart's examination, 'but the record supports greater exertional limitations."  Id.  The ALJ found that Dr. Smart's estimate of 70% limitation "fail[ed] to provide any specific limitations" and was "conclusory and somewhat vague[.]"  Id.  The opinion did provide some support for the RFC, however, since "it indicates that claimant retains some ability to work."  Id.  The ALJ gave "great weight" to the opinion of examining physician Kalyani Ganesh, MD, who found "moderate to severe limitations of lifting, carrying, pushing and pulling."  Id.  The medical evidence supported this opinion, the ALJ found, and the opinions was "consistent with the imaging studies, as well as the findings of Dr. Smart and Dr. Jordan as to the nature of the restriction[.]"  Id.

The ALJ there found that Plaintiff could not perform his past relevant work, which fell into the "heavy exertional level[.]"  Id. at 23.  Plaintiff's RFC limited him to light work and had additional limitations.  Id.  The ALJ further concluded that, as of February 9, 2016, Plaintiff was an "individual closely approaching advanced age," and that the transferability of job skills was not material to the disability determination because the Medical-Vocational Rules supported a finding of "'not disabled' whether or not the claimant has transferable job skills."  Id.  Finally, the ALJ found that, "considering the claimant's age,

education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that claimant can perform." Id. As a result of this finding, the ALJ ruled that Plaintiff's "disability ended February 9, 2016, and the [Plaintiff] has not become disabled again since that date." Id. at 24.

## IV.  STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401,

91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V.   ANALYSIS

At issue here is the ALJ's finding that Plaintiff was not disabled after February 8, 2016. Read generously, Plaintiff argues that the ALJ erred by failing to include Plaintiff's severe pain in his back and arm in establishing his RFC and in posing hypothetical questions to the vocational expert who testified at his hearing. The ALJ did not include, he claims, his need to take four breaks in an eight-hour work day in the RFC, nor did she include the side effects of the medications he took to control that pain. Plaintiff also contends that the ALJ's finding was inconsistent; she found him unable to work from January 3, 2015 to February 9, 2016 because of his shoulder injury but found that he could work after February 9, even though he continued to suffer from the same shoulder condition.

Plaintiff complains about how the ALJ questioned the vocational expert. Federal

law requires that the ALJ "determine that significant numbers of jobs exist in the national economy that the claimant can perform." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ can use either the Social Security Administration's Medical Vocational Guidelines or the "testimony of a vocational expert" in making this determination. Id. The ALJ can use such expert testimony "regarding a hypothetical as long as 'there is substantial evidence to support the assumption[s] upon which the vocational expert based his opinion,'" and the hypothetical "accurately reflect[s] the limitations and capabilities of the claimant involved." Id. (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)); see also, Snyder v. Colvin, 667 Fed.Appx. 319, 321 (2d Cir. 2016) ("When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony.").

> The ALJ posed the following hypothetical to the vocational expert:
>
> Assume an individual of the same age, education and work background as the claimant who can perform light work with the following restrictions: The individual can occasionally and intermittently reach with the nondominant arm, but cannot reach overhead or behind the body with the nondominant arm. The individual cannot lift more than ten pounds over waist height. The individual cannot climb ladders, ropes or scaffolds, work at unprotected heights or in close proximity to dangerous machinery. You know what, I'm going to change it. Sorry. I misspoke. The individual cannot lift more than ten pounds with the nondominant arm, rather than cannot lift ten pounds of weight over the waist height.

R. at 60. The vocational expert testified that Plaintiff could not perform his past work with those restrictions. Id. at 61. At the same time, the expert testified, Plaintiff could perform work as an usher, page, or investigator for dealer accounts, jobs that existed in significant numbers in the national economy. Id. at 61-62. The ALJ then amended the hypothetical to include a person who "could only rarely, and I'm defining rarely as 15 percent or less of

10

the day, reach with the nondominant arm and once again, could not reach overhead or behind the body with the nondominant arm" and asked whether "those jobs you described would be available." Id. at 63. The expert testified that the individual could still perform those jobs. Id. at 64. If that person had no function in the dominant arm at all, the expert found, he could still work as an usher, but could only do about "three quarters" of the investigator jobs. Id. at 64-65.

The ALJ then asked about a situation where "the individual was limited overall to picking up ten pounds with those other restrictions." Id. at 65. Such a restriction, the expert testified, would move the jobs into the "sedentary" category, especially if the worker could use only one arm or use one arm rarely. Id. Under those circumstances, sedentary jobs would not exist in sigificant numbers. Id. The expert also responded to Plaintiff's attorney's hypotheticals, concluding that no jobs would exist if Plaintiff "needed a reclining break every two hours for 15 minutes, and if he had to be absent from work 2 to 3 days per month because of his restrictions." Id. at 66.

For the period here in dispute, the ALJ established the following RFC:

beginning February 3, 2016, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally, intermittently reach with the non-dominant arm but cannot reach overhead or behind the body with the non-dominant arm; the claimant cannot lift more than 10 lbs. with the non-dominant arm; the claimant cannot climb ladders, ropes or scaffolds, work at or in close proximity to dangerous machinery.

Id. at 21

While Plaintiff here complains about the hypotheticals the ALJ raised to the vocational expert, he does not contend that the hypotheticals the ALJ posed failed to reflect the RFC she established. As explained above, the hypotheticals posed by the ALJ

11

reflected the limitations she established in the Plaintiff's RFC.  Plaintiff's complaints about the contents of the ALJ's hypotheticals, therefore, provide no basis for challenging the ALJ's decision.  The Court will deny the Plaintiff's motion for judgment on the pleadings on this basis.

At another level, Plaintiff's argument concerns the sufficiency of the evidence to support the RFC that the ALJ assigned.  He contends that the RFC "failed to include Plaintiff's additional limitations (pain, Plaintiff's medications and side effects therefrom).  Plaintiff argues that without including this pain and the effects of the medication he takes to limit that pain, the ALJ lacked substantial evidence for her RFC.

The ALJ provided two RFCs for the Plaintiff, one for the period when she found he suffered from a disability that precluded working and one from the period when she concluded that he had improved to a degree sufficient to permit him resuming work.  The first RFC, which covered the period between January 3, 2015 and February 8, 2016, contained the same restrictions about movement that the later RFC listed above did: "the claimant could not climb ladders, ropes or scaffolds, work at unprotected heights or in close proximity to dangerous machinery and could occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps."  R. at 15.  The difference between that RFC and the later one came in reference to Plaintiff's shoulder and arm: "the claimant could not reach with the non-dominant arm, and during the acute post-surgery phases had very limited use of his non-dominant arm[.]"  Id.

The ALJ's opinion repeatedly referenced Plaintiff's pain, including his back pain, and the treatment for that pain in describing the limitations assigned in the RFC.  In explaining the basis for this RFC, the ALJ found:

12

> Claimant's condition is a combination of work-related injuries sustained years before he became unable to work; he injured his back in November 1997 and his left shoulder in August 2010. He returned to work after both injuries, stopping work in January 2015, just prior to his first shoulder surgery.
>
> Following his back injury in 1997, an MRI showed persistence and possibly slight progression of a right sided disc herniation impinging the right L5 nerve root and his physician recommended a lumbar discectomy at L4-5. Thereafter, claimant had multiple back surgeries; a right hemi-laminectomy and partial discectomy at L4-5 in 1998, an emergency incision and drainage of the surgical wound in 1998, following which claimant returned to work, and a lumbar laminectomy at L5-S1 in 2001. Claimant's condition did not improve, and though his surgeon consistently noted that he was partially disabled, he returned to work as a UPS delivery driver. An examination in 2005 showed difficulty moving from seated to standing position due to low back pain, walking with moderate pain, moderate midline tenderness paraspinal tenderness, positive seated straight leg raise test, poor reversal, pain with flexion and extension, a limp on the right leg, and reduced range of motion minimally in all directions. Claimant continued to work, with pain medication, until 2015.

Id. at 16. The ALJ further noted that, though Plaintiff continued working after shoulder surgery in 2010, his "shoulder pain worsened." Id. The ALJ then described two shoulder surgeries in January and June, 2015, which provided only slight initial improvement. Id. at 16-17. "Cortisone injections and intensive physical therapy did not relieve the pain and stiffness, but by December 2015, he had seen mild improvement." Id. at 17. The ALJ also noted that Plaintiff treated his back pain with narcotics between January 2015 and February 2016. Id. In explaining the limitations she assigned to movement, the ALJ noted that the shoulder played a role in Plaintiff's limitations, but so did his back, finding that: "[h]is back condition, which is addressed with narcotic pain medication, supports these limitations, as well as postural limitations on bending, balancing, kneeling, crouching and crawling, and limitations on climbing ramps and stairs." Id.

The Plaintiff is thus incorrect to contend that the ALJ did not consider or incorporate the limitations caused by his back condition, pain, and use of narcotics to treat that pain in

13

establishing the RFC. While the ALJ did not repeat that analysis in establishing the second RFC, she continued the limitations established in the first RFC in the second. Moreover, the ALJ cited the opinions of experts in establishing both sets of limitations. Plaintiff does not challenge the weight the ALJ assigned to these expert opinions. Those opinions, combined with the medical record cited by the ALJ, provided substantial evidence for the RFC that the ALJ established. To the extent that Plaintiff argues that the ALJ lacked substantial evidence for the limitations she established in the RFC, the Court does not agree. The Court will deny the motion in this respect as well. The ALJ had substantial evidence for both RFCs she established.

Plaintiff also appears to argue that the ALJ lacked substantial evidence to find that his condition had improved to the extent that he could return to work. The Social Security Act provides that "[a]fter an individual has been found entitled to benefits, his entitlement is to be periodically reviewed . . . and his benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that he is now able to work." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). To determine the existence of such improvement, evaluators "must compare 'the current medical severity of the impairment[] . . . to the medical severity of the impairment[] at the time' of the most recent favorable decision." Id. at 586-87 (quoting 20 C.F.R. § 404.1594(b)(7) (alterations in original)).

The ALJ found that medical improvement had occurred "as of February 8, 2016, the date the claimant's disability ended." R. at 22. The ALJ found:

> Claimant had some medical improvement following his 2015 surgeries and he has been released by his physician for light work with restrictions, an opinion shared by the Worker's Compensation medical examiner. Physical therapy improved his condition, and while improvements were mild, there has been medical improvement. An examination in May 2016 showed no obvious antalgic gait, left

> shoulder showed no deformity, no significant atrophy, but he had a stiff shoulder joint; elevation was 80, abduction was approximately 60, with no significant internal or external rotation; he was stiff passively, with decent strength 5/5 with internal and external rotation. Claimant testified at the hearing that he was self-employed, doing car detailing part time, working with his right arm and taking breaks as needed. Claimant continues to treat his back with medication, and testified that disc replacement surgery has been recommended, but he is reluctant to undergo additional surgery.

Id. Such improvement increased Plaintiff's ability to perform work. Id. The ALJ then examined expert opinions completed after February 2016, and found that the RFC "is supported by the medical examination findings, and partially by the opinions of both treating and evaluating physicians and treatment providers." Id. at 23. The new RFC "reflects the modest medical improvement made by claimant and the consensus of providers that claimant retains some ability to work, though limited by his back and shoulder impairments." Id.

Recognizing the deferential nature of the inquiry, the Court finds that substantial evidence supported the ALJ's conclusion that Plaintiff experienced sufficient improvement in his medical condition to support a finding that he was no longer disabled. The ALJ pointed to evidence of continued treatment and a resulting slight improvement in Plaintiff's ability to reach with his non-dominant arm. She also pointed to opinions and explained the weight she gave them in finding that the medical improvement altered the Plaintiff's RFC to a degree that permitted him to re-enter the workforce. The Court will deny the Plaintiff's motion in this respect as well. The Court will therefore deny Plaintiff's motion for judgment on the pleadings and grant the Defendant's.

**V.     Conclusion**

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, dkt.

# 15, is DENIED.  The Court will grant the defendant's motion for judgment on the pleadings, dkt. # 21.  The Clerk of Court is directed to enter judgment for the Defendant and close the case.

**IT IS SO ORDERED.**

**Dated:** September 8, 2021

Thomas J. McAvoy
Senior, U.S. District Judge